UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cr-20557-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,
v.

JAVIER HERNANDEZ,

    Defendant.
_____/

**ORDER ON MOTION TO SUPPRESS**

**THIS CAUSE** is before the Court upon Defendant Javier Hernandez's ("Hernandez") Motion to Suppress Hernandez Cell Phone Evidence, ECF No. [102] ("Motion"). Hernandez filed Thomas Pullen's Expert Report under seal in support of the Motion. ECF No. [109-1]. The Government filed a Response opposing the Motion, ECF No. [122], and Hernandez filed a Reply in support of the Motion. ECF No. [124]. The Court has carefully considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court denies the Motion.

    **I.    BACKGROUND**

The Court assumes the parties' familiarity with the allegations in this case but sets forth allegations pertinent to adjudicating the Motion.[1] The Government alleges that between December 2017 and October 2019, Hernandez actively participated in a criminal organization that smuggled Cuban migrants into the United States by way of Mexico via boat. ECF No. [103] at 1. The Government further alleges that Hernandez participated in the conspiracy by procuring stolen

---

[1] The Court previously entered an Omnibus Order on Hernandez's Motions *in Limine*, which set forth the pertinent allegations in this action. ECF No. [101].

boats and transporting them from Florida to Mexico, and Defendant Ramon Reyes Arnada ("Reyes Arnada") would identify the target vessels and communicate with Hernandez about them. *Id.* at 2. Hernandez and Reyes Arnada would then obtain counterfeit documentation for the vessels and boat parts, among other things, and were paid by others in the criminal organization. *Id.*

On March 24, 2023, the Government filed a five-count Superseding Indictment charging Hernandez with conspiring to encourage aliens to enter the United States for financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count 1); conspiring to transport stolen vehicles in violation of 18 U.S.C. § 371 (Count 2); conspiring to traffic in certain motor vehicles, to export a motor vehicle with tampered identification number, and to alter motor vehicle identification numbers in violation of 18 U.S.C. § 371 (Count 3); trafficking in certain motor vehicles in violation of 18 U.S.C. § 2321 (Count 4); and engaging in a money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count 5). ECF No. [51]. Reyes Arnada is charged only in Counts 2 and 5 of the Superseding Indictment. *See id.*

**A. Seizure of Hernandez's Phone**

The Government represents that Mexican law enforcement officials ("LEOs") seized and secured Hernandez's phone ("Phone") on November 21, 2019 in Progreso, Mexico. ECF No. [102] at 1; ECF No. [122] at 4. Mexican LEOs were aware of the Federal Bureau of Investigation's ("FBI") investigation into the alien smuggling ring, so Mexican LEOs notified the FBI of Hernandez's arrest and the recovery of his cellphone. *Id.* FBI agents traveled to Mexico to retrieve the Phone and the parties dispute when FBI agents did so. ECF No. [102] at 1 (November 24, 2019); ECF No. [122] at 4 n.2 (December 10, 2022). However, on February 26, 2020, Magistrate Judge Edwin G. Torres signed a search warrant authorizing the extraction of data on the Phone using Cellebrite software. ECF No. [102] at 2; ECF No. [122] at 5. And on February 27, 2020, FBI

agents executed the search warrant by performing the forensic extraction, consistent with Hernandez's representation that FBI agents picked up the Phone on November 24, 2019. ECF No. [122] at 5. On March 2, 2020, FBI agents took photographs of the Phone's messages on the application WhatsApp that were not extracted during the February 27, 2020 search. *Id.* at 5. FBI agents took photographs of the WhatsApp chats "and additional items on the phone that were not captured" on February 27, 2020. *Id.* In September 2020, "agents powered on the cellphone to take additional photographs of the WhatsApp messages." *Id.*

On April 7, 2021, the FBI's Computer Analysis Response Team ("CART") performed a second extraction from the Phone for WhatsApp data using Cellebrite premium software. *Id.* at 6. Hernandez asserts the only warrant pertaining to the Phone had expired on March 10, 2020. ECF No. [124] at 4.

**B. Thomas Pullen Report**

Hernandez retained computer/digital forensic expert Thomas Pullen to analyze the Phone contents. ECF No. [102] at 2. Pullen asserts that Mexican LEOs left the Phone turned on after the seizure, allowing it to communicate with the network, "which violates one of the canons of mobile forensic work: do not change the evidence from the time of seizure." ECF No. [124] (quoting ECF No. 109-1 at 16). Pullen states,

> there also does not appear to be any documentation of what was done with the phone, but apparently it was browsed by [LEOs] and screen shots taken using the phone itself on November 22 [2019], which violates another rule of mobile forensics: as the FBI's regional computer forensic laboratory put it, "don't browse. Scrolling through a suspect's mobile phone may alter evidence, and preserving evidence is key."

*Id.* (quoting ECF No. [109-1] at 16) (alterations in Reply). Pullen indicates that someone took the Phone off airplane mode after the Phone's seizure, indicating that the Phone was placed on airplane mode sometime after the seizure, and that

3

> taking the phone out of airplane mode destroyed the forensic preservation of the phone, which means [LEOs] connected the phone to the Internet, and thereby changed the information on the phone. New messages came in, which changed the WhatsApp cache, which made messages irrecoverable that may have been otherwise recovered.

*Id.* (quoting ECF No. [109-1] at 16). According to Pullen, 190 new files appeared on the phone while it was in police custody and nine of those files are from WhatsApp. *Id.* (citing ECF No. [109-1] at 18). Moreover, 9,309 text messages on WhatsApp were deleted and only 18 were recoverable. *Id.* (citing ECF No. [109-1] at 18).

According to Pullen, "by leaving the phone on, connected to the Internet, and having WhatsApp opened, the message data base changed from the time of seizure, when new messages were written to the database. And in writing new data to the database, any deleted messages present will be overwritten by the SQL cache." *Id.* (citing ECF No. [109-1] at 18-19). Pullen asserts that "somebody" logged onto the PayPal application using the Phone sometime after the seizure. *Id.* at 3 (quoting ECF No. [109-1] at 20). Due to the foregoing, Pullen opines that "it is certain that the phone was substantially altered by the non-standard forensic procedures undertaken: messages were made irrecoverable, time stamps were changed, data was altered." *Id.* at 4 (citing ECF No. [109-1] at 22) (emphasis removed).

**C. Motion**

Hernandez seeks suppression and exclusion from trial of any testimonial or documentary evidence relating the Phone, specifically "the Government's Cellebrite software extraction of the contents of the Phone." ECF No. [102] at 1. Hernandez contends that law enforcement officials had failed to implement well-established rules designed to prevent the tainting, alteration, or loss of cellphone evidence. ECF No. [102] at 2. In particular, "there does not appear to be proper chain-of-custody evidence supporting the integrity of the Phone's contents after seizure." *Id.* at 3.

Moreover, Hernandez asserts "evidence on the phone must not change after its seizure" to preserve the integrity of that evidence. *Id.* at 2-3 (emphasis in original).

On the latter point, Hernandez contends the integrity of the evidence was undermined by numerous changes to the Phone after the search. First, "the Phone was browsed manually which *changed* data on the Phone." *Id.* (emphasis in original). Second, LEOs permitted WhatsApp to "continue communicating with the network," resulting in an unknown number of messages being deleted and rendered irrecoverable. *Id.* at 3. Item 42084, a message on WhatsApp on the Phone, is a communication that post-dates the Phone's seizure. *Id.* at 4. Also, the last entry on the Phone indicates that 190 new files appeared on the Phone while it was in law enforcement official custody, and 9,309 WhatsApp messages were deleted and only 18 were recoverable. *Id.* at 4-5. Third, Hernandez submits that "someone took the Phone off [airplane] mode," thereby destroying the forensic preservation of the phone. *Id.* Together, Hernandez concludes those alterations constitute a substantial change to or tampering with evidence. *Id.*

In support, Hernandez relies on *United States v. Garcia* and argues that the Court may not permit introduction of evidence on the Phone if the Court cannot be satisfied that "in reasonable probability the evidence has not been changed in any important respect[.]"ECF No. [102] at 9 (citing *United States v. Garcia*, 718 F.2d 1528, 1534 (11th Cir. 1983), *aff'd*, 469 U.S. 70, 105 S. Ct. 479, 83 L. Ed. 2d 472 (1984)).

The Government asserts that the purported failure to follow well-established procedures for the preservation of cellphone evidence was due to *Mexican* law enforcement officials. ECF No. [122] at 9. The Government maintains that under those circumstances the Fourth Amendment does not mandate the exclusion of the evidence on the Phone because the Mexican LEOs were not acting as agents of U.S. law enforcement officials—even if U.S. LEOs were present during the search of

the Phone—and, in any event, the Mexican LEO's conduct was not such that it can "shock[] the judicial conscience." *Id.* at 10. Even if the Fourth Amendment embraces the Mexican LEOs' conduct, the Government submits that Hernandez has failed to carry his burden to show that suppression is proper because he does not attack the warrant authorizing the Phone search, the probable cause supporting the warrant, or "the circumstances surrounding [the cellphone search's] execution." *Id.* at 10 n.6. As such, the Government contends the Defendant's arguments go to the reliability or authenticity of the evidence under Rule 901 of the Federal Rules of Evidence and not to whether law enforcement violated Hernandez's Fourth Amendment rights. *Id.* In the Government's view, those arguments fail in any event. First, the Government contends that purported gaps in the chain of custody go to the weight of the evidence and not its admissibility. *Id.* at 12. Second, the Government states that the Court is entitled to presume that law enforcement officials would not tamper with exhibits, so questions as to authentication and reliability of the evidence on the Phone are jury questions. *Id.* at 14. That is so because the Government asserts that manually browsing the Phone "cannot be said to cause the alteration of data on the device, aside from the operating system functions that run on a live device." *Id.* at 8. To the extent Hernandez contends that LEOs took screenshots of the Phone after it was "on the network," the Government submits that no evidence supports that claim. *Id.*

The Government contends deletion of cellphone data does not require exclusion of cellphone evidence. *Id.* at 12-13. Nor does LEO's failure to take a cellphone off a network. *Id.* at 13. Regarding the 190 new items on the Phone, the Government counters that Hernandez overlooks how those changes may stem from the normal operation of the Phone. *Id.* at 7-8. Regarding the deleted items, the Government responds that Hernandez ignores how *he* may have been the one who deleted the files. *Id.* at 6. Finally, the Government states that it is immaterial whether Mexican

LEOs turned off the Phone's airplane mode because the Government does not intend to introduce evidence of Reyes Arnada's November 23, 2019 phone call. *Id.* at 6-7.[2]

Hernandez generally replies that the Government's Response is attorney argument not supported by expert opinion. ECF No. [124] at 1. Hernandez further replies that the April 7, 2021 phone extraction was not pursuant to a lawful search warrant; thus, the evidence obtained from that extraction is "fruit of the poisonous tree" that must be suppressed. *Id.* at 4 (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).

## II. LEGAL STANDARD

The Fourth Amendment to the United States Constitution guarantees the rights of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation[.]" *United States v. Easterling*, No. 2:21-CR-455-MHT-SMD, 2022 WL 1671871, at *3 (M.D. Ala. May 9, 2022), *report and recommendation adopted*, No. 2:21CR455-MHT, 2022 WL 1667549 (M.D. Ala. May 25, 2022) (quoting U.S. Const. amend. IV). "Probable cause exists if, 'given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Trader*, 981 F.3d 961, 969 (11th Cir. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). "Search warrants are presumed to be validly issued, and a defendant seeking to suppress evidence seized pursuant to a warrant bears the burden of proving that the warrant was defective." *Easterling*, 2022 WL 1671871, at *3 (citing *Batten v. United States*, 188 F.2d 75, 77 (5th Cir. 1951)).[3]

---

[2] The Court assumes the Government is referring to Item 42084 given the date of that item.
[3] *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

The exclusionary rule bars the admission of evidence obtained in violation of the Fourth Amendment and prohibits the introduction of derivative evidence acquired as an indirect result of an unlawful search. *United States v. Noriega*, 676 F.3d 1252, 1259 (11th Cir. 2012) (first citing *Davis v. United States*, 564 U.S. 229, 232, 131 S. Ct. 2419, 2423, 180 L. Ed. 2d 285 (2011), then citing *Murray v. United States,* 487 U.S. 533, 536-37, 108 S. Ct. 2529, 2533, 101 L. Ed. 2d 472 (1988)).

### III.   DISCUSSION

#### A. The Fourth Amendment's Applicability

The central issue is whether the Court must exclude evidence from the Phone on the grounds that LEOs conducted a search or seizure in violation of the Fourth Amendment. The analysis depends on whether the Fourth Amendment applies to actions by Mexican LEOs. The Fourth Amendment exclusionary rule generally does not apply to searches and seizures conducted by foreign officials on foreign soil. *United States v. Odoni*, 782 F.3d 1226, 1238 (11th Cir. 2015). That is because the exclusionary rule is a deterrent sanction that is inapplicable where a private party or foreign government commits the offending act. *Id.* (citing *United States v. Janis*, 428 U.S. 433, 455 n.31, 96 S. Ct. 3021, 3033 n.31, 49 L. Ed. 2d 1046 (1976)). However, the exclusionary rule applies if "American law enforcement officials substantially participate in [a] foreign search" or if "the foreign authorities actually conducting the search were acting as agents for their American counterparts." *United States v. Rosenthal*, 793 F.2d 1214, 1232 (11th Cir.), *modified*, 801 F.2d 378 (11th Cir. 1986). The exclusionary rule also applies where the conduct of the foreign officers "shocks the conscience of the American court." *Id.* at 1231-32.

Here, the Court discerns no conduct by the Mexican LEOs that "shocks" its conscience. However, FBI agents traveled to Mexico and executed the search warrant by performing a forensic

8

extraction of the Phone on February 27, 2020. That fact concerns whether the FBI's participation in Mexican LEOs' search of the Phone was so substantial "so as to convert the search into a joint venture." *Id.* at 1231 (citing *Stonehill v. United States*, 405 F.2d 738 (9th Cir. 1968)). However, the Court need not consider the issue further because Hernandez does not raise it in his Motion and the parties' submissions do not indicate the Phone was searched pursuant to a joint U.S.-Mexican law enforcement venture. The opposite is true: the FBI searched the Phone *after* the Yucatan State Police contacted the FBI following Hernandez's arrest. ECF No. [102] at 1.

In any event, Hernandez has not demonstrated that LEOs' failure to implement well-established forensic procedures while conducting a search of the phone renders the search unreasonable.[4] Hernandez provides no legal authority supporting that a failure to implement well-established procedures can amount to a Fourth Amendment violation. Hernandez relies on *Garcia*, but *Garcia* addressed whether the evidence admitted at trial met the requirements for authentication and identification under Rule 901(a). *Garcia*, 718 F.2d at 1533. *Garcia* did not address arguments concerning the exclusionary rule. Nor does Hernandez provide support for his contention that a gap in chain-of-custody evidence justifies the application of the exclusionary rule. As such, Hernandez has failed to carry its burden to demonstrate that conduct by Mexican LEOs requires the exclusion of evidence from the Phone.

B.  **Admissibility under Rule 901**

To the extent that the Motion is a motion *in limine* to exclude evidence from the Phone on reliability or authentication grounds, the Government's submissions demonstrate that such evidence is not excludable on that basis. First, as the Government correctly observes, gaps in the

---

[4] The Court reaches that issue because the Court disagrees with the Government's assertion that Hernandez does not attack the circumstances surrounding the cellphone search's execution. Hernandez argues that the search of the Phone failed to meet the standard for searches of cellphones.

chain of custody do not mandate the exclusion of evidence under Rule 901(a); rather, such gaps "affect only the weight of the evidence and not its admissibility." *United States v. Roberson*, 897 F.2d 1092, 1096 (11th Cir. 1990). Rule 901 provides that evidence is properly authenticated when there is "evidence sufficient to support a finding that the item in question is what the proponent claims it is." Fed. R. Evid. 901(a). Once a party makes out a *prima facie* showing that proffered evidence is what the party purports the evidence to be, the proffered evidence should be admitted. *United States v. Caldwell,* 776 F.2d 989, 1001-02 (11th Cir. 1985). Purported gaps in the Phone's chain of custody do not warrant the Phone's exclusion at trial. *See United States v. Ramirez*, 491 F. App'x 65, 73 (11th Cir. 2012) ("The district court did not abuse its discretion when it admitted evidence of the lab reports over Ramirez's objection that there were problems with the chain of custody.").

Second, Hernandez has not otherwise shown that the Phone must not be admitted. *Garcia*, 718 F.2d at 1533-34 ("The admission of exhibits into evidence is predicated on a showing that the physical exhibit being offered is in substantially the same condition as when the crime was committed.") (citing *Brewer v. United States*, 353 F.2d 260, 262 (8th Cir. 1965))). Contrary to Hernandez's contention, the question is not whether WhatsApp messages were deleted from the Phone but instead whether WhatsApp messages that were *not* deleted are themselves in the same state as when those messages were sent. *See United States v. Moore*, 71 F.4th 678, 687-88 (8th Cir. 2023) (affirming admission of text messages where messages were in the same state as when cellphone was seized based on testimony that the messages were accurate records of what existed on phone even though other data was lost during a reset of the cellphone). Hernandez has not alleged that the WhatsApp messages that were on the Phone prior to its seizure were changed or fabricated, so exclusion is not warranted because other messages were deleted. *Id.* Nor has

Hernandez alleged—through his expert or otherwise—that the actions by Mexican LEOs of manually browsing the cellphone, failing to immediately place the Phone on airplane mode, or subsequently taking the Phone off airplane mode affected the content of Phone's extant messages. Absent such allegations, the Phone is not inadmissible on Rule 901 grounds. *See Garcia*, 718 F.2d at 1534 (explaining that a trial judge may admit tangible objects into evidence where the trial judge is satisfied that "in reasonable probability the [object] has not been changed *in any important respect*" (emphasis added)).

### C. April 7, 2021 Search

For the first time in his Reply, Hernandez contends that "[t]he Government reports on the phone extraction using Cellebrite on April 7, 2021 were not the product of a lawful search warrant" because there was no valid search warrant in effect on that date. ECF No. [124] at 4 (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). Hernandez did not raise that issue in its Motion but is responding to the Government's representation in its Response that the FBI's CART performed a second extraction of data from the Phone. ECF No. [122] at 6. The Court has already determined that Hernandez has failed to demonstrate that Mexican LEOs' failure to adhere to standard procedures to preserve cellphone evidence is violative of the Fourth Amendment. And as the Government observes, Hernandez does not articulate any attack on the warrant authorizing the Phone search, or the probable cause supporting the warrant. ECF No. [122] at 10 n.6. Hernandez has not shown that the February 2020 warrant had "expired" in the sense that the Government acted beyond the warrant's scope by performing the second extraction; nor has he provided legal authority supporting that a subsequent search of a phone obtained pursuant to a lawfully executed warrant is an unreasonable search or seizure.[5] Accordingly, the April 7, 2021 search of the phone

---

[5] Hernandez states that he need not cite case law in addition to *Garcia* because "[t]hose who have practiced in the legal community a long time have learned that when there are not a multitude of cases on

does not require the Court to exclude the evidence obtained on that date and the Court declines to do so.

### IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [102]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 18, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

a certain legal principle it is because that principle is so well-settled it is not litigated[.]" ECF No. [124] at 7. However, the Court notes that statement is itself unsupported by legal authorities and ignores that the absence of cases on a legal principle may also mean the "legal principle" does not exist. *See Goldberg for Jay Peak, Inc. v. Raymond James Fin., Inc.*, No. 16-21831-CIV, 2017 WL 7791564, at *7 (S.D. Fla. Mar. 27, 2017) (quoting *Rapid Transit Lines, Inc. v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970)) ("A party's failure to cite legal authority in support of its position 'suggests either that there is no authority to sustain its position or that it expects the court to do its research.'"). The Local Rules generally require that memoranda of law cite supporting authorities and the Court expects the parties to do so. *See* S.D. Fla. 7.1(a)(1).