UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cr-20557-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,
v.

JAVIER HERNANDEZ,

    Defendant.
_____/

**<u>OMNIBUS ORDER ON DEFENDANT'S POST-TRIAL MOTIONS</u>**

**THIS CAUSE** is before the Court on Defendant Javier Hernandez's ("Hernandez") Post-Trial Motion for Judgment of Acquittal Pursuant to Rule 29,[1] ECF No. [196] ("Rule 29 Motion"), and Motion for New Trial Pursuant to Rule 33, ECF No. [197] ("Rule 33 Motion"). The Government filed a Response to the Rule 29 Motion, ECF No. [198], and Hernandez filed a Reply to the Rule 29 Response, ECF No. [201]. The Government also filed a Response to the Rule 33 Motion, ECF No. [199], and Hernandez filed a Reply to the Rule 33 Response, ECF No. [202]. The Court has considered the motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, the Motions are denied.

**I.   BACKGROUND**

This case concerns a conspiracy for financial gain to encourage noncitizens to enter the United States through the use of stolen vessels, a certain Toyota Tundra, the alteration of vehicle identification (VIN) numbers and hull identification numbers (HIN), and money laundering. *See*

---

[1] Unless otherwise indicated, all references to a "Rule" or the "Rules" are to the Federal Rules of Criminal Procedure.

*generally* ECF Nos. [101], [126], [136], [138], [145]. As set forth in Superseding Indictment, the Government charged Hernandez with conspiring to encourage aliens to enter the United States for the purpose of financial gain in violation of Title 8, United States Code Sections 1324(a)(l)(A)(iv) and 1324(a)(l)(B)(i), all in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count 1); conspiring to transport stolen vehicles in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2312 (Count 2); conspiring to traffic in certain motor vehicles, to export a motor vehicle with tampered identification number, and to alter motor vehicle identification numbers in violation of 18 U.S.C. §§ 371, 2321, 553(a)(2), and 511(a)(1) (Count 3); trafficking in certain motor vehicles in violation of 18 U.S.C. § 2321 (Count 4); and engaging in a money laundering conspiracy in violation of 18 U.S.C. §§ 1956(a)(2)(A), 2312, 2321, and 1956(c)(7)(B)(iv), all in violation of 18 U.S.C. § 1956(h) (Count 5). *See generally* ECF No. [51].

The case proceeded to a twelve-day jury trial. *See* ECF Nos. [152], [155], [156], [164], [165]. [167], [168], [174], [175], [178], [179], [180]. On October 11, 2023, the Government rested its case. Counsel for Hernandez thereupon moved *ore tenus* for a judgment of acquittal pursuant to Rule 29 as to each count of the Superseding Indictment, and the Court reserved ruling on that motion. ECF No. [175]. On October 17, 2023, the Court denied the motion. ECF No. [149]. The next day, the Court provided the jury with jury instructions, ECF No. [185], and—after the parties delivered closing arguments—the jury convicted Hernandez of all Counts. ECF No. [180]; *see also* ECF No. [188] (jury verdict).[2]

---

[2] On October 25, 2023, the parties filed the admitted electronic exhibits on the docket. ECF Nos. [189] – [191]. The Government represents it will conventionally file other admitted exhibits. *See* ECF No. [193] at 1. The record does not indicate it has yet done so.

### A. Rule 29 Motion

Hernandez contends that a judgment of acquittal is warranted because the evidence is insufficient to sustain a conviction on any of the Counts. ECF No. [196]. The Government responds that Hernandez's arguments ignore several key pieces of testimony, and his contentions are contrary to the overwhelming evidence presented to the jury, which provided more than a sufficient basis for his conviction. ECF No. [198] at 1.

### B. Rule 33 Motion

Hernandez argues the admission of evidence from his phone obtained using Cellebrite software on April 7, 2021—evidence that comprises the fruits of an unreasonable warrantless search in violation of the Fourth Amendment—tainted trial proceedings and amounted to a serious error that justifies a new trial. ECF No. [197] at 5. In response, the Government points out that the Rule 33 Motion is Hernandez's third attempt to relitigate the Court's denial of his motion to suppress, ECF No. [102]. *See* ECF No. [199] at 3. The Government argues that Hernandez cannot prevail under Rule 33 because he makes no argument that the evidence preponderated heavily against the verdict, especially where the evidence was overwhelmingly in favor of his conviction. *Id.* at 3-4.

The Court analyzes the arguments in each Motion below.

## II. LEGAL STANDARD

### A. Rule 29

Rule 29 provides in relevant part:

> (a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

> (b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.
> (c) After Jury Verdict or Discharge.
>> (1) *Time for a Motion.* A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.
>> (2) *Ruling on the Motion.* If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

Fed. R. Crim. P. 29.

"After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). As Defendant has done here, "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2).

When deciding a motion under Rule 29, the district court must determine "whether the evidence, examined in the light most favorable to the Government, was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt." *United States v. Williams*, 390 F.3d 1319, 1323-24 (11th Cir. 2004) (citing *United States v. Varkonyi*, 611 F.2d 84, 85-86 (5th Cir. 1980)). Thus, the test is whether a reasonable jury could find, beyond a reasonable doubt, that the defendant is guilty of violating the crimes alleged in the indictment. *United States v. Macko*, 994 F.2d 1526, 1532 (11th Cir. 1993). Applying this test, "[a]ll credibility choices must be made in support of the jury's verdict." *Williams*, 611 F.2d at 1323 (citing *United States v. Gianni*, 678 F.2d 956, 958-59 (11th Cir. 1982) and *United States v. Burns*, 597 F.2d 939, 941 (5th

Cir. 1979)). Because a jury may choose among reasonable constructions of the evidence, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* at 1324 (quoting *United States v. Young*, 906 F.2d 615, 618 (11th Cir. 1990); *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983)). "A conviction must be affirmed unless there is no reasonable construction of the evidence from which the jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Ignasiak*, 667 F.3d 1217, 1227 (11th Cir. 2012) (citation omitted).

### B. Rule 33

Rule 33(a) provides that:

a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.
(b) Time to File.
   (1) *Newly Discovered Evidence.* Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
   (2) *Other Grounds*. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33(a).

A motion for a new trial is "addressed to the sound discretion of the trial court." *United States v. Champion*, 813 F.2d 1154, 1170 (11th Cir. 1987). When a motion for new trial is based on claims that the verdict is contrary to the weight of the evidence, "the court need not view the evidence in the light most favorable to the verdict" but "may weigh the evidence and consider the credibility of the witnesses." *United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985) (quoting *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir. 1980) and *United States v. Simms*,

508 F. Supp. 1188, 1202 (W.D. La. 1980)). "If the court concludes that, 'despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.'" *Id.* (quoting *Lincoln*, 630 F.2d at 1319). However, a district court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Id.* at 1313 (citing *Simms*, 508 F. Supp. at 1202). Instead, it must let the verdict stand unless it finds the evidence preponderates heavily against the verdict so much so that it would cause a miscarriage of justice. *Id.* (internal citations omitted). Because motions for new trial based on the weight of the evidence are disfavored, they are granted sparingly, with caution and only in "really 'exceptional cases.'" *Id.*

### III. DISCUSSION

#### A. Rule 29 Motion

##### i. Count I

Hernandez contends there is insufficient evidence to prove that any vessel Hernandez stole in Florida and piloted to Mexico was sold or otherwise used to carry out the conspiracy, or that the boats were later sold to finance the conspiracy or were subsequently used to smuggle Cuban migrants. *Id.* at 2-3, 4. Assuming *arguendo* there was sufficient evidence to show he did so, Hernandez contends there is insufficient evidence supporting that the four stolen boats were used or sold to accomplish the objects of the conspiracy, that Hernandez knew that the boats would be used or sold for those objects, or that he willingly joined in the conspiracy. *Id.* at 3.

The Government responds that the testimony of Crespo Marquez, Reyes Aranda, and Roberto Marrero established that Hernandez agreed with each of them to try and accomplish their scheme. ECF No. [198] at 5. The Government also responds that it proved Hernandez knowingly

6

and willingly joined the scheme based on Crespo Marquez's testimony; and Hernandez's admissions of (1) visiting "*La Finca*," the site where migrants were held, (2) transporting money for Neco and other members of the conspiracy, (3) being paid by Gonzalez-Vidal for transporting stolen vessels and vehicles, and (4) knowing the migrants who were walking around *La Finca* were paid the smuggling fee. ECF No. [198] at 5-6. The Government faults Hernandez for ignoring the testimony of FBI Agent Spielvogel. Hernandez replies that FBI Agent Spielvogel's testimony does not support that Hernandez made any "confession" regarding the conspiracy or his involvement with it. ECF No. [201] at 3-4.

> 8 U.S.C. § 1324 provides in relevant part that
>
> Any person who . . .
> > (iv) encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; or
> > (v)(I) engages in any conspiracy to commit any of the preceding acts . . .
>
> shall be punished as provided in subparagraph (B).
>
> (B) A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs--
> > (i) in the case of a violation of subparagraph (A)(i) or (v)(I) or in the case of a violation of subparagraph (A)(ii), (iii), or (iv) in which the offense was done for the purpose of commercial advantage or private financial gain, be fined under Title 18, imprisoned not more than 10 years, or both[.]

8 U.S.C. § 1324.

The Court instructed the jury as to Count I as follows:

> The Defendant can be found guilty only if all the following facts are proved beyond a reasonable doubt:
> > First: The defendant and one or more persons in some way agreed to try to accomplish a shared and unlawful plan;
> > Second: The defendant knew the unlawful purpose of the plan and willfully joined in it; and
> > Third: The object of the conspiracy was to encourage or induce an alien to come to, enter, or reside in the United States for the purpose of commercial advantage or financial gain, knowing or in reckless disregard of the fact that such coming to, entry, and residence was or would be in violation of law.

ECF No. [185] at 11.

Hernandez does not dispute the legal sufficiency of the Court's instructions to the jury. Rather, Hernandez contends that the evidence that he transported stolen vessels to Mexico is insufficient to show that he knowingly and willingly agreed with one or more members of the conspiracy to encourage or induce noncitizens to come to the United States, as opposed to demonstrating that he engaged in some other immaterial activity, such as "deliver[ing] pleasure craft to Neco's marina for his personal use or sale to others." ECF No. [196] at 3.

However, the evidence plainly supports the jury's verdict as to Count I. First, it established that Hernandez and one or more persons in some way agreed to try to accomplish a shared and unlawful plan. During the trial, Reynaldo Crespo Marquez ("Crespo Marquez") , a co-conspirator, testified that he met Hernandez off Holbox Island in 2017 and assisted Hernandez with refueling the vessel the *Grady White*, and both transported the *Grady White* to co-conspirator Neco's marina in Mexico. Crespo Marquez also testified that Hernandez visited *La Finca*, one of the smuggling houses used by the conspiracy to house migrants. Co-conspirator Ramon Reyes Aranda ("Reyes Aranda") also testified at trial that he stole boats with Hernandez in 2018-2019. Moreover, Roberto Marrero Cisneros ("Cisneros"), another co-conspirator, testified that Hernandez told him he was going to see Reyes Aranda and had to take a boat to Mexico. The foregoing testimony demonstrates Hernandez's agreement to assist in the human smuggling scheme.

Second, the evidence established that Hernandez knew the unlawful purpose of the conspirators' plan. FBI Agent Spielvogel testified that Hernandez identified *La Finca*. Crespo Marquez testified that Hernandez knew about the human smuggling. The evidence also established that Hernandez willingly joined the conspiracy. Hernandez took actions beyond merely transporting boats to Mexico; FBA Agent Spielvogel testified that Hernandez admitted to bribing

8

Mexican law enforcement officials, including by offering the Toyota Tundra to a high-ranking Mexican law-enforcement official,[3] a vehicle about which Cisneros testified to creating a fake VIN number. Those actions strongly indicate Hernandez's willing participation in the human smuggling operation.

The foregoing is further supported by the voluminous electronic data admitted in this case. The record included conversations with several individuals during which Hernandez discussed his involvement with the conspiracy, *see, e.g.*, Gov't's Ex. 7 at 38 (stating that the safeguarded fuel tanks are clean), ECF No. [189-8]; *see also* Gov't's Exs. 7A (WhatsApp data), ECF No. [189-9]; 9A (Cellebrite extraction report), ECF No. [189-12].

Moreover, Esthalin Benitez Castillo and Jose Carlos Martinez Alfonso testified that they were smuggled and beaten by members of the conspiracy. When considered with the other compelling testimony and evidence, the foregoing demonstrates that the object of the conspiracy was to encourage or induce an alien to come to, enter, or reside in the United States for the purpose of commercial advantage or financial gain, knowing or in reckless disregard of the fact that such coming to, entry, and residence was or would be in violation of law. The conspirators were not merely transporting individuals to freedom gratis or for tourism.

Accordingly, the jury could reasonably find beyond a reasonable doubt that Hernandez was guilty of Count I.

Hernandez's argument that FBI Agent Spielvogel's testimony was insufficient to support a conviction on Count I is unavailing. ECF No. [201] at 3-4. Hernandez's focus on only one

---

[3] Hernandez argues he only admitted that he was paid to drive the Toyota Tundra from Florida to Mexico and that others took it from him to deliver it to the official. ECF No. [201] at 5. Even if Hernandez's involvement with the Toyota Tundra bribe was merely to bring it to Mexico, that fact still supports the fact that he knew of the object of the conspiracy and that he knowingly and willingly participated in it when considered with the other evidence presented.

witness's testimony ignores the other competent evidence sufficient to prove each of the elements of Count I. Hernandez also maintains the Government never adduced evidence that proved any vessel that Hernandez allegedly stole in Florida and drove to Mexico was sold or otherwise used to carry out the conspiracy. But Hernandez provides no legal support requiring that a conspiracy as the one charged in Count I be proven with evidence that the conspirators used or benefitted from the resources that were acquired by one or more of the conspirators. Absent such support, Hernandez's arguments are without merit. Neither does Hernandez provide citations to any legal authorities supporting that Hernandez's statements needed to be a confession to constitute competent evidence as to Count I.

When examined in the light most favorable to the Government, the evidence was sufficient for a reasonable jury to find, beyond a reasonable doubt, that Hernandez knowingly and willingly agreed with one or more members of the conspiracy to encourage or induce aliens to come to the United States.

    *ii.*    **Count II**

As to Count II, Hernandez argues the testimony of Reyes Aranda is insufficient under *United States v. McCarrick*, 294 F.3d 1286 (11th Cir. 2002), and *United States. v. Gonzalez*, 183 F.3d 1315 (11th Cir. 1999). ECF No. [196] at 4. The Government responds that (1) Hernandez's emphasis on Reyes Aranda's testimony ignores his own admissions and the evidence obtained from his cellphone, which also support his conviction for Count III, and that (2) those cases do not concern Rule 29. ECF No. [198] at 6. Hernandez replies that the Superseding Indictment does not allege that he piloted all four boats at issue and disputes the relevance of Hernandez's airline travel and "passport fraud."

18 U.S.C. § 371 provides in part that:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. As relevant to "any offense against the United States," 18 U.S.C. § 2312 provides that "[w]hoever transports in interstate or foreign commerce a motor vehicle, vessel, or aircraft, knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both." The Court instructed the jury on Count II (and Count III) as follows:

> The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
> (1) two or more persons in some way agreed to try to accomplish a shared and unlawful plan;
> (2) the Defendant knew the unlawful purpose of the plan and willfully joined in it;
> (3) during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and
> (4) the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

ECF No. [185] at 13.

Based on those instructions, the evidence supports the jury's verdict as to Count II. Hernandez's argument that "the only material facts the Government adduced during the Government's case-in-chief that incriminated Hernandez in count 2 was Reyes's testimony" ECF No. [201] at 7, is belied by the evidence. Hernandez wholly ignores the other testimony and exhibits presented during the trial. As such, the Hernandez's reliance on *McCarrick* and *Gonzalez* based on the purported deficiency in Reyes Aranda's testimony is misplaced.

  *iii.*  **Counts III, IV**

Regarding Counts III and IV, Hernandez argues the evidence is insufficient that he was aware of the unlawful removal, obliteration, tampering with, or alteration of the 2018 Toyota Tundra VIN or of the vessels' HINs. ECF No. [196] at 5-6. The Government points to FBI Agent

Spielvogel's testimony establishing that Hernandez identified Marrero as the person who created false VIN numbers for the conspiracy. ECF No. [198] at 8. Hernandez replies that his knowledge of Marrero's participation in the conspiracy does not prove Hernandez's knowing and willing involvement in the conspiracy. ECF No. [201] at 5.

The Court has quoted 18 U.S.C. § 371 and 18 U.S.C. § 2321 above and 18 U.S.C. § 553 provides in relevant part:

> [w]hoever knowingly imports, exports, or attempts to import or export . . . any motor vehicle or off-highway mobile equipment or part of any motor vehicle or off-highway mobile equipment, knowing that the identification number of such motor vehicle, equipment, or part has been removed, obliterated, tampered with, or altered; shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 553(a)(2).

The Court instructed the jury on Count IV as follows:

> Defendant Javier Hernandez can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
> (1) Defendant Hernandez acquired or possessed a road motor vehicle or component on which the vehicle identification number (VIN) had been removed, obliterated, tampered with, or altered;
> (2) the identification number was one required by the United States Department of Transportation;
> (3) such removal, obliteration, tampering with, or alteration was done unlawfully;
> (4) Defendant Javier Hernandez was aware of the unlawful removal, obliteration, tampering with, or alteration; and
> (5) Defendant Javier Hernandez had an intent to sell or otherwise dispose of the motor vehicle or component part.

ECF No. [185] at 14-15.

The evidence supports the jury verdict as to Counts III and IV. Hernandez admitted to FBI Agent Spielvogel that he knew Marrero Cisneros as the person who created false VIN numbers for the organization. In the light most favorable to the Government, the admitted evidence demonstrates that Hernandez was aware of the unlawful removal, obliteration, tampering with, or alteration. Moreover, the documentary evidence supports Hernandez's awareness of the VIN/HIN

tampering. *See, e.g.*, Gov't's Ex. 5 at 57 (Hernandez explaining to co-conspirator Neco that he needed a VIN number); ECF No. [189-4]; *see also* Gov't's Exs. 5A; 7 at 2 (asking for the VIN for the Toyota Tundra), ECF No. [190-1]; 7A; 9A (Cellebrite extraction report), ECF No. [189-12]; 9B (native messages of the Android phone of the "tank man"), ECF No. [189-13].

    *iv.*   **Count V**

Regarding Count V, Hernandez argues that, even assuming the evidence was sufficient that Hernandez stole and piloted vessels, the evidence does not prove Hernandez conducted financial transactions "destined for the United States from or through a place outside the United States." ECF No. [196] at 7. The Government responds that both Crespo Marquez and Reyes Aranda testified regarding the transfer and transportation of money between Mexico and the United States for the purposes of promoting the enterprise's illegal activities, including the bribery of foreign officials and transportation of stolen vessels. ECF No. [198] at 9. The Government further responds that it submitted evidence of financial transactions via Western Union. *Id.*[4] Hernandez replies that the Government has failed to point to any evidence showing any instances of a money transfer from Mexico to the United States. ECF No. [201] at 8-9.

Pursuant to 18 U.S.C. § 1956(h), "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." For the purposes of Count V, chargeable offenses under § 1956(h) include those provided for in 18 U.S.C. §§ 1956(a)(2)(A), 2312, 2321, and 1956(c)(7)(B)(iv). The Court has set forth Sections 2312 and 2321 above and Section 1956(a)(2)(A) provides that

> [w]hoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or

---

[4] The Western Union records are not in the record.

13

through a place outside the United States . . . (A) with the intent to promote the carrying on of specified unlawful activity . . . shall be sentenced . . . .

The Court instructed the jury on Count V as follows:

The Defendant[] can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
(1) two or more people agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. Section 1956; and
(2) the Defendants knew about the plan's unlawful purpose and voluntarily joined in it.

ECF No. [185] at 17.

Regarding Section 1956, the Court stated:

To violate Title 18, United States Code, Section 1956(a)(2)(A), an individual knowingly transports, transmits, or transfers a monetary instrument or money to a place in the United States from or through a place outside the United States; and an individual acted with the intent to promote the carrying on of specified unlawful activity.

*Id.* at 15-16.

The Court's review of the record compels the conclusion that sufficient evidence supports the conviction as to Count V. First, the testimony of Crespo Marquez demonstrates that Hernandez was in business with him and Gonzalez Vidal, specifically for Hernandez to transport stolen vessels and vehicles. Crespo Marquez's testimony further supports that those individuals knew about the conspiracy's unlawful purpose and voluntarily joined in it. Also, Reyes Aranda's testimony regarding the theft of vessels supports that the stolen property was transferred from the United States to Mexico for illegal activities. The evidence also established a transfer of money in exchange. Government's Exhibit 33 reflected two transfers to Hernandez representing payments to Hernandez's *Bancoppel* account on September 11 and 18, 2020. ECF No. [190-20]. In the light most favorable to the Government, that evidence supports that there was a money transfer from Mexico to the United States since the *Bancoppel* account appears to be a bank account in Mexico and Defendant resided in the United States based on his participation in the conspiracy as the

deliverer of boats and a track. To the extent that Hernandez argues that such transfers were for "relatively small amounts and could have been related to non-criminal matters just as easily as criminal ones," ECF No. [201] at 9, that conjecture ignores the legal standard the Court must apply to a Rule 29 motion.

All Counts being supported by competent evidence, the Rule 29 Motion must be denied.

### B. Rule 33 Motion

The Court previously rejected Hernandez's Fourth Amendment arguments in two written Orders, wherein the Court set forth the circumstances surrounding the at-issue search and the applicable law. *See* ECF Nos. [136], [138]. The Court also denied Hernandez's motion for reconsideration at trial on October 2, 2023, the fifth day of trial. The Court there reasoned that the motion for reconsideration failed to meet the standard for granting such a motion, observing that the facts presented at trial were the same facts presented to the Court by way of the motion to suppress. The Court further reasoned that there was a good faith exception to the Fourth Amendment's exclusionary rule, given that the warrant authorizing the seizure and initial search of Hernandez's mobile phone met the Fourth Amendment's requirements. The Court found support for its decision in *United States v. Brito-Arroyo*, 2021 WL 3661200, at *3 (11th Cir. Aug. 18, 2021). In that case, the Eleventh Circuit reiterated that "when the police reasonably act with a good-faith belief that their conduct is lawful, or when their conduct involves mere negligence, the deterrent value of suppression is diminished." *See id.* (citing *Davis v. United States*, 564 U.S. 229, 229-31, 131 S. Ct. 2419, 2419 (2011)).

FBI Agent Spielvogel testified that he believed the language of the pertinent warrant allowed for the extraction of data from a mobile phone beyond a two-week period following its seizure, given the practical problem that mobile phones are often password protected. However, on redirect examination, he could not specifically recall a provision that would support a

15

subsequent Cellebrite extraction after March 10, 2020. Hernandez points out the absence of such a provision to invoke the exclusionary rule and justify a new trial. But FBI Agent Spielvogel's testimony does not "exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights[.]" *Brito-Arroyo*, 2021 WL 3661200, at *4 (quoting *Davis*, 564 U.S. at 229-31, 131 S. Ct. 2419). He credibly testified to his good-faith belief that the warrant supported the subsequent Cellebrite extraction, even if that belief was substantially based on his experience with executing warrants and not any specific language regarding the warrant's expiration, especially where FBI Agent Spielvogel testified to the practical difficulties with obtaining such information. Hernandez ignores the Court's finding that the good faith exception to the exclusionary rule applies in this case. *See* ECF No. [202] (citing *Riley v. California*, 573 U.S. 373 (2014) for the proposition that "a warrant must be obtained before the Government can search a cell phone ***unless there is a recognized exception to that requirement***.") (emphasis added). Moreover, Hernandez makes no genuine attempt to demonstrate that a Rule 33 motion is the appropriate vehicle for the arguments he raises. Rather, Hernandez submits that he has met the Rule 33 standard for a new trial because the subsequent Cellebrite extraction was a "glaring violation of the Fourth Amendment's warrant requirement to secure convictions." ECF No. [202] at 3. However, for the reasons stated, the Court finds otherwise and "the interest of justice" does not warrant a new trial. *See* Fed. R. Civ. P. 33. Accordingly, the Rule 33 Motion is denied.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Hernandez's Post-Trial Motion for Judgment of Acquittal Pursuant to Rule 29, **ECF No. [196]**, is **DENIED**.

2. Hernandez's Motion for New Trial Pursuant to Rule 33, **ECF No. [197]**, is **DENIED**.

Case No. 22-cr-20557-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 15, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record